# In the United States Court of Federal Claims

No. 21-1114C
(Filed: May 3, 2022)
**FOR PUBLICATION**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| CORNELIO SALAZAR | \* |
| D/B/A USA RANCH, | \* |
| | \* |
| Plaintiff, | \* |
| | \* |
| v. | \* |
| | \* |
| THE UNITED STATES, | \* |
| | \* |
| Defendant. | \* |
| | \* |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*A. Blair Dunn*, Western Agriculture, Resource and Business Advocates, LLP, Albuquerque, New Mexico, for Plaintiff.

*Rafique O. Anderson*, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C. for Defendant, United States. With him on briefs were *Brian M. Boynton*, Acting Assistant Attorney General, *Patricia M. McCarthy*, Director, *Eric P. Bruskin*, Assistant Director, as well as *Mary E. Zoldak*, Attorney, Mountain Region, Office of the General Counsel, United States Department of Agriculture.

## OPINION AND ORDER

Plaintiff Cornelio Salazar brings claims arising from water-handling contracts he entered with the United States Forest Service ("USFS").[1] *See generally* Compl. (ECF 1). The government moved to dismiss under Rule 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC").[2] Because Defendant raised arguments based on contractual waivers, I converted the motion to dismiss to a

---

[1] In his filings, Plaintiff identifies "USDA Forest Service" as the defendant. That is inconsistent with this Court's Rules, which require that the United States be "designated as the party defendant." *See* RCFC 10(a). Nonetheless, the substance of Plaintiff's suit is directed at the United States, "not its officers, [or] any other individual." *Gulley v. United States*, 150 Fed. Cl. 405, 412 (2020) (citing *Kemp v. United States*, 124 Fed. Cl. 387, 392–93 (2015)). The error appears to be merely technical, and has been corrected in the caption.

[2] Def.'s Mot. to Dismiss (ECF 5); Pl.'s MTD Resp. (ECF 6); Def.'s MTD Reply (ECF 7). I heard oral argument on Nov. 16, 2021. *See* Tr. of Oral Arg. ("Tr.") (ECF 21).

motion for summary judgment and ordered new briefing.[3] Defendant's motion for summary judgment is now fully briefed and ripe for decision.[4] For the reasons discussed below, Defendant's motion is **GRANTED**. The case is **DISMISSED**.

## BACKGROUND

## I.  The Clean-Water Contract

The USFS, acting under authority delegated by the Secretary of Agriculture, is responsible for the preservation of national forests, including the prevention and extinguishment of forest fires. *See* 36 C.F.R. § 200.3(b). To fulfill that purpose, the USFS contracts with private parties to supply and replenish its water resources.

Mr. Salazar entered a water-hauling contract with the USFS in 2019 (Contract No. 12837119T7058). Pl. Exh. 1 at 1 (ECF 1-1).[5] The contract provided that Mr. Salazar would be eligible, on the government's request, to transport water for the USFS in the southwestern United States at a rate of $2,099 per day. *See id.* at 2, 8, 19.

Three portions of the contract deserve special attention. First, the contract authorized compensation for travel to and from a worksite, including rest periods. *See id.* at 8, 38–39. One condition for travel compensation was that Plaintiff's truck pass an examination upon arrival:

> If the resource does not pass inspection at the incident or designated inspection station, it is considered noncompliant. The Contractor may be given 24 hours or time frame designated by Government representatives to bring the resource into compliance. If the resource does not pass inspection, no payment will be made for travel to the incident or point of inspection or return to the point of hire, or for the time that the resource was not available.

*Id.* at 45.

---

[3] *See* Order (ECF 9). Release and waiver are affirmative defenses to claims of breach of contract. *See* RCFC 8(c)(1). "Plaintiffs are not required to negate affirmative defenses in their complaints," *City of Fresno v. United States*, 148 Fed. Cl. 19, 33 (2020), so an affirmative defense ordinarily does not justify dismissal under RCFC 12(b)(6) unless the allegations in the complaint show that the defense applies, *see Silver Buckle Mines, Inc. v. United States*, 117 Fed. Cl. 786, 797–98 (2014); Wright & Miller, 5B Fed. Prac. & Proc. Civ. § 1357 (3d ed.), which was not the case here.

[4] Def.'s Mot. for Summ. J. (ECF 13) ("Def.'s Mot."); Pl.'s Resp. (ECF 18); Def.'s Reply (ECF 19).

[5] It is not clear that all of the materials cited by the parties have been authenticated. One of the declarations submitted by Defendant does not even appear to have been executed. APPX030. The documents also contain minor ambiguities and possible discrepancies. But neither party has objected that the other's materials "cannot be presented in a form that would be admissible in evidence," *see* RCFC 56(c)(2), and most evidentiary issues are immaterial to resolving Defendant's motion.

Second, the contract was for transportation of clean water, as distinguished from "gray water."[6] Plaintiff's water transportation vehicles were listed as available for "Water Tender," *see id.* at 2, which the contract distinguished from gray water tender, *id.* at 28. The contract specified that a given truck could not operate as both a water tender and a gray water tender:

> Due to health issues associated with gray water and possible exposure to humans as well as potential contamination to pump apparatus, trucks offered as Gray Water Trucks will not be awarded an agreement as a Water Tender. Vendors with both a Water Tender and a Gray Water agreement for the same truck will need to change out all plumbing, including tank(s), pump, plumbing and hoses/fittings as appropriate for the resource order or choose which resource they want to keep under agreement. The other resource agreement will be cancelled. Coordinate with the Contracting Officer(s) on which agreement you want to keep.

*Id.*

Third, the contract contained specific provisions for modifying its terms. It provided, in essence, that the contract could only be modified by the original procurement officer or his successor, or by an incident-specific emergency contract:

> Changes to Agreements may only be made by the original signing procurement official or a designated successor contracting officer …. If the original signing procurement official or designated successor contracting officer is not available and adjustments are deemed appropriate, an Emergency Equipment Rental Agreement (EERA) shall be executed at the incident and shall be applicable ONLY for the duration of that incident.

*Id.* at 20.

## II. <u>Plaintiff's Performance and the Emergency Equipment Rental Agreement</u>

In the summer of 2020, the USFS undertook extinguishment of the "Dolan" forest fire at the Los Padres National Forest, in Big Sur, California. Def.'s Appendix ("APPX") APPX031, APPX034 (ECF 13-1); Salazar Aff. ¶ 2 (ECF 18-1). Plaintiff left New Mexico to support fire extinguishment efforts on August 24 and remained

---

[6] The parties do not explain what gray water is. The Clean Water Act defines "graywater" as "galley, bath, and shower water." 33 U.S.C. § 1322(a)(11). Other sources define gray water as "all waste water streams [that] come out from buildings except toilet water." Sonali Manna, *Treatment of Gray Water for Reusing in Non-potable Purpose to Conserve Water in India*, 13 Int'l J. of Applied Env't Scis. 703, 705 (2018).

through September 22, a period of 30 days. *See* Pl. Exh. 2 at 1–28 (ECF 1-2); Salazar Aff. ¶ 2; APPX001–002, APPX011.

Plaintiff arrived at ground support on August 27, 2020. Pl. Exh. 2 at 3; APPX034. His truck initially failed inspection, but Mr. Salazar purchased certain items to bring it into compliance, receiving approval at some time later that day. *See* Pl. Exh. 2 at 3; APPX034; Salazar Aff. ¶¶ 3–4. The government concedes that Mr. Salazar received a grace period for repairs, as the clean-water contract permitted. Tr. at 21. From August 27 to 29, Plaintiff was in service, but his truck remained unassigned. Pl. Exh. 2 at 4–5; APPX011.

Around this time — the documents do not establish exactly when — a "facilities unit leader" allegedly told Plaintiff that USFS had a pressing need for gray-water transportation. Salazar Aff. ¶ 6. Mr. Salazar's truck was demobilized from clean-water transportation and reassigned to gray water on August 30; he began transporting gray water the next day. *Id.* ¶ 7; Pl. Exh. 2 at 6–7, APPX001–002, APPX034–035. He continued to perform gray-water transportation until September 22. APPX001–002, APPX034–035.

On September 22, Plaintiff and an authorized government representative executed an Emergency Equipment Rental Agreement ("EERA"). *See* APPX004–APPX008, APPX037. The EERA — a separate contract effective from August 30 to September 22, with its own contract number (129AB520K5243) — was for a "Gray Water Truck" at a rate of $1,350 per day. APPX004; Salazar Aff. ¶¶ 10–11.

## III.   Plaintiff's Payment and Complaint

At the same time Mr. Salazar executed the EERA, he executed two separate invoices — one under his original clean-water contract, one under the EERA.

Under the clean-water contract, Plaintiff agreed to be paid $2,099 per day from August 27 to 29 — *i.e.*, the period when he was unassigned after arrival in California — minus $1,749 for the 10 hours his truck was not available for service on August 27. APPX011. He was not compensated for his time traveling to California. The invoice includes a release stating that "contractor hereby releases the government from any and all claims arising from this agreement except as reserved in 'remarks[.]'" *Id.* The "Remarks" section contains the word "FINAL," and makes no reference to outstanding disputes over payment. *Id.*

Under the EERA, Plaintiff accepted payment of $1,350 per day for August 30 to September 22, *i.e.*, the period when he was occupied with transporting gray water.[7]

---

[7] His payment was deducted $1,125 for a truck breakdown on September 10. APPX003.

APPX001–002. The EERA invoice contains the same release language as the invoice for the clean-water contract, and likewise identifies no payment disputes. *Id.*

In an affidavit supporting his opposition to the motion for summary judgment, Plaintiff claims he was forced to sign the waivers and that government agents misrepresented their effect:

> 16. I was told in no uncertain terms that if I did not agree to waive my objection about my previous contract, I would not be paid anything except for the two days before I started hauling gray water.

> 17. … I was informed that my waiver was qualified to only apply to accepting the EERA contract and did not waive my dispute regarding the original agreement or the modification of it to haul gray water.

Salazar Aff. ¶¶ 16–17.

Plaintiff alleges the government breached the clean-water contract and the duty of good faith and fair dealing by (1) failing to compensate him for his travel time to California, and (2) failing to compensate him at the rate of $2,099 per day for gray-water transportation.[8]

## DISCUSSION

### I.  Summary Judgment Standard

As the party seeking summary judgment, the government must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). "[A]ll evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable factual inferences should be drawn in favor of the nonmoving party." *Dairyland Power Coop. v. United States*, 16 F.3d 1197, 1202 (Fed. Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), and *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). However, to survive the government's motion, Mr. Salazar "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

---

[8] As noted above, the period at issue runs 30 days from August 24 to September 22, 2020. The records show that Plaintiff was paid $2,099 from August 27–29, 2020, APPX011–APPX012. That leaves a total of 27 contested days. Tr. at 40.

## II. **Plaintiff's Claims**

Resolving the case depends on the terms of the relevant contracts, including the language contained in the two waivers. "Contracts to which the government is a party are subject to the general rules of contract interpretation," *Wetlands Water District v. United States*, 109 Fed. Cl. 177, 191 (2013), which necessarily "begin[] with the language of the written agreement." *Id.* (quoting *Coast Fed. Bank, FSB v. United States*, 323 F.3d 1035, 1038 (Fed. Cir. 2003)). Clear and unambiguous terms will be given their ordinary meaning. *See Barseback Kraft AB v. United States*, 121 Fed. Cir. 1475, 1479 (Fed. Cir. 1997). To "permit otherwise would cast 'a long shadow of uncertainty over all transactions' and contracts." *McAbee Constr. v. United States*, 97 F.3d 1431, 1435 (Fed. Cir. 1996) (quoting *Trident Ctr. v. Connecticut Gen. Life Ins. Co.*, 847 F.2d 564, 569 (9th Cir. 1988)). Here, the plain terms of Plaintiff's contracts foreclose his claims.

### A. Travel to California (August 24–August 26, 2020)

In its motion for summary judgment, Defendant raises two arguments against Plaintiff's claim for his time traveling from New Mexico to California: (1) A provision in the clean-water contract specified that a vehicle which failed inspection would not be compensated for travel to the point of inspection, *see* Def.'s Mot. at 13–14; and (2) the release contained in the invoice signed by Mr. Salazar covered payment from August 27 to August 29, 2020, thereby precluding his claims for that period, *see* Def.'s Mot. at 17–21. Because the second argument requires dismissal of Plaintiff's claims for travel time, I do not reach Defendant's argument based on the initial inspection.

The only contract in effect when Mr. Salazar traveled from New Mexico to California between August 24 and 26 was the clean-water contract. And on September 22, 2020, Plaintiff signed a general release from "any and all claims arising under" that contract, with no written reservation of rights. APPX011. This Court and the Federal Circuit have repeatedly held that "absent special vitiating circumstances, a general release bars claims based upon events occurring prior to the date of the release." *Augustine Med., Inc. v. Progressive Dynamics, Inc.*, 194 F.3d 1367, 1373 (quoting *Johnson, Drake & Piper, Inc. v. United States*, 209 Ct. Cl. 313, 531 F.2d 1037, 1047 (Ct. Cl. 1976)); *see also Imprimis Investors LLC v. United States*, 83 Fed. Cl. 46, 63 (Ct. Cl. 2008); *Dairyland Power Coop. v. United States*, 27 Fed. Cl. 805, 811–12 (1993).

Circumstances that might vitiate a general release include economic duress, fraud, mutual mistake, or continued conduct between parties suggestive of their never having contemplated the claim in question as covered by the release. *See IMS Engineers-Architects, P.C. v. United States*, 92 Fed. Cl. 52, 64 (citing *Mingus*

*Constructors, Inc. v. United States*, 812 F.2d 1387, 1395 (Fed. Cir. 1987), and *J.G. Watts Constr. Co. v. United States*, 161 Ct. Cl. 801, 807 (1963)). Mr. Salazar appears to allege that he signed the releases under duress. Specifically, Mr. Salazar claims that "[he] was told in no uncertain terms that if [he] did not agree to waive [his] objection about [his] previous contract, [he] would not be paid anything except for the two days before [he] started hauling gray water." Salazar Aff. ¶ 16.

The Federal Circuit applies a three-part conjunctive test for duress, requiring that a party establish: "(1) that it involuntarily accepted the other party's terms, (2) that circumstances permitted no other alternative, and (3) that such circumstances were the result of the other party's coercive acts." *N. Star Steel Co. v. United States*, 477 F.3d 1324, 1334 (Fed. Cir. 2007) (citing *Rumsfeld v. Freedom NY, Inc.*, 329 F.3d 1320, 1329 (Fed. Cir. 2003)); *see also Dureiko v. United States*, 209 F.3d 1345, 1358 (Fed. Cir. 2000). "Economic pressure and even the possibility of severe financial loss ... are not duress," and "a claim of economic duress is not substantiated by the making of hard bargain." *Sneeden v. United States*, 33 Fed. Cl. 303, 310 (1995).

Regardless of whether Plaintiff signed the waivers "involuntarily" or as a result of "coercive acts," Plaintiff's theory of duress — that he would only be paid for two days if he did not sign, *see* Salazar Aff. ¶ 16 — is insufficient to establish that he had "no other alternative." *N. Star Steel Co.*, 477 F.3d at 1334. The government, in effect, gave Mr. Salazar a choice between immediate payment upon signing a waiver and a potentially larger future payment after litigation. Ordinarily, the possibility of litigation is precisely the kind of "alternative" that precludes a duress defense to a contract. *See Mobility Sys. & Equip. Co. v. United States*, 51 Fed. Cl. 233, 237–38 (2001); *Rissman v. Rissman*, 213 F.3d 381, 386 (7th Cir. 2000) ("No legal system can accept an assertion that 'this contract was signed under duress because my only alternative was a lawsuit.' That would eliminate settlement — and to a substantial degree the institution of contract itself."); *Wright v. Eastman Kodak Co.*, 445 F. Supp. 2d 314, 319 (W.D.N.Y. 2006). A duress defense might still be available in exceptional circumstances, such as where the government's own wrongful acts have placed the signing party under extraordinary financial pressure at the time of the waiver, *see Mobility Sys.*, 51 Fed. Cl. at 237 ("It has ... become 'settled law that the mere stress of business conditions will not constitute duress where the defendant was not responsible for those circumstances.'"); *Oasis Int'l Waters, Inc. v. United States*, 134 Fed. Cl. 155, 203 (2017),[9] but Mr. Salazar presents no evidence that he was in such

---

[9] Judge Easterbrook in *Rissman* noted that a duress claim might still proceed where the plaintiff faced a "remote" but impractical possibility of filing suit. 213 F.3d at 386–87.

straits. Because there is no genuine dispute as to whether Mr. Salazar could have refused to sign, his duress defense does not overcome his signed waiver.

Mr. Salazar also appears to argue that his waiver is void because government agents misrepresented its effect: "I was informed that my waiver was qualified to only apply to accepting the EERA contract and did not waive my dispute regarding the original agreement or the modification of it to haul gray water." *See* Salazar Aff. ¶ 17. This Court and the Federal Circuit have evaluated contractual misrepresentation claims using a test derived from the *Restatement* (Second) *of Contracts*, which permits courts to void a contract when:

> (1) defendant made a misrepresentation; (2) the misrepresentation was either fraudulent or material; (3) the misrepresentation induced plaintiff to enter into the contract; and (4) plaintiff was justified in relying on the misrepresentation.

*Morris v. United States*, 33 Fed. Cl. 733, 745 (1995) (citing *Restatement* (Second) *of Contracts* § 164); *see also Barron Bancshares, Inc. v. United States*, 366 F.3d 1360, 1381 (Fed. Cir. 2004).

Whatever Mr. Salazar might have been told, he could not have been justified in relying on it because the terms of the waiver were plain: "[C]ontractor hereby releases the government from any and all claims arising from this agreement," with an exception for written reservations that Mr. Salazar never made. APPX011. Because the waiver expressly "release[ed] the government from any and all claims arising from" the clean-water contract, *see id.*, it left no room for any representation or belief that it "did not waive [his] dispute" regarding travel time, *see* Salazar Aff. ¶ 17. This Court has repeatedly rejected misrepresentation theories where the alleged misrepresentation was inconsistent with contractual language, *see Nematollahi v. United States*, 38 Fed. Cl. 224, 232 (1997); *Detroit Hous. Corp. v. United States*, 55 Fed. Cl. 410, 415–16 (2003), and I must do the same here.

**B. Gray-Water Transportation (August 30–September 22, 2020)**

Mr. Salazar also alleges breach of contract and breach of the duty of good faith and fair dealing based on the government's refusal to pay the clean-water contract's per diem rate of $2,099 between the dates of August 30 and September 22, 2020, when Plaintiff was transporting gray water. Plaintiff mainly claims that his clean-water contract was modified to allow him to transport gray water at the original rate. That theory fails for several reasons.

Most importantly, he waived it as described above. Plaintiff was paid for gray -water transportation pursuant to the EERA, and he signed a release waiving "any

and all claims arising from" that contract without any written reservations. APPX001–APPX002. Even if Plaintiff were correct that he transported gray water under a modification of the clean-water contract, he waived his claims arising from that contract too. APPX011. Either way, his waivers — which, again, survive Plaintiff's theories of duress and misrepresentation — unambiguously cover the field.

Aside from the two waivers, Plaintiff brings no evidence that his clean-water contract was in fact modified to cover gray-water transportation at the original rate. The contract was for clean water only, not gray water, Pl. Exh. 1 at 28, and specified that modifications could only be made through "the original signing procurement official or a designated successor contracting officer (as designated officially in [the government's procurement system])," or by an EERA. *Id.* at 20.

There is no evidence that any authorized person agreed to modify the clean-water contract. At most, Mr. Salazar claims that he learned about a need for gray-water transportation from a "facilities unit leader," that an unspecified individual asked him to "haul gray water under the original contract," and that a "finance officer did not inform [him] that [he] was no longer under" the clean-water contract. Salazar Aff. ¶¶ 6–8. Those assertions leave no basis to infer that any of the individuals Mr. Salazar interacted with was in fact the original contracting officer or a designated successor. *See Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997) ("Anyone entering into an agreement with the Government takes the risk of accurately ascertaining the authority of the agents who purport to act for the Government, and this risk remains with the contractor even when the Government agents themselves may have been unaware of the limitations on their authority."). Even if the contracting officer was aware that Mr. Salazar was transporting gray water before the EERA was signed, "[s]ilence in and of itself is not sufficient to establish a [consent] by the [contracting officer]." *Harbert/Lummus Agrifuels Projects v. United States*, 142 F.3d 1429, 1434 (Fed. Cir. 1998). If the clean-water contract was modified at all, it could only have been by the EERA. Pl. Exh. 1 at 20. But the EERA is what established the lower gray-water rate, so it contradicts Mr. Salazar's theory that the clean-water contract was modified to allow gray-water transportation at the original rate. In the absence of a genuine factual dispute, there is no basis for Mr. Salazar's claim that the clean-water contract was ever modified.

Plaintiff lastly alleges that the government breached its duty of good faith and fair dealing when it allowed him to transport gray water between August 30 and September 22, 2020 but failed to pay him at the clean-water contract's rate. *See* Compl. ¶¶ 21–24; Pl.'s Resp. at 5. Plaintiff's waiver covers those claims as well as his claims for breach of contract. *See, e.g.*, *Doe v. United States*, 153 Fed. Cl. 629, 640–41

(2021); *IMS Engineers-Architects, P.C. v. United States*, 92 Fed. Cl. 52, 63–66 (2010), *aff'd,* 418 F. App'x 920 (Fed. Cir. 2011).

Even if those claims fell outside the waiver, the government is entitled to judgment as a matter of law. The government would have breached the duty of good faith and fair dealing if its acts interfered with Plaintiff's performance of contractual duties or "destroy[ed] the reasonable expectations of the other party regarding the fruits of the contract." *Dobyns v. United States*, 915 F.3d 733, 739 (Fed. Cir. 2019) (quoting *Centex Corp. v. United States*, 395 F.3d 1283, 1304 (Fed. Cir. 2005)). The duty of good faith and fair dealing, however, "cannot expand a party's contractual duties beyond those in the express contract or create duties inconsistent with the contract's provisions." *Precision Pine & Timber, Inc. v. United States*, 596 F.3d 817, 831 (Fed. Cir. 2010). Here, the clean-water contract did not authorize payment for transportation of gray water, and Plaintiff has not raised a factual dispute about whether the contract was modified. The government was therefore under no obligation to pay Plaintiff for hauling gray water at all, and so could not have breached any duty in refusing to pay him at a particular rate.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED**. The case is **DISMISSED**.

The Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

s/ Stephen S. Schwartz
STEPHEN S. SCHWARTZ
Judge
